UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JARROD JAMIESON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | 1:09-cr-00186-JAW-1 |
| | ) | 1:13-cv-00339-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

In August 2013, Petitioner Jarrod Jamieson filed a motion pursuant to 28 U.S.C. § 2255, contesting his 2010 conviction and sentence. Petitioner was convicted of conspiracy to possess with intent to distribute oxycodone and possession with intent to distribute oxycodone. Petitioner's amended section 2255 motion is now pending. (ECF No. 45.)

In this matter, Petitioner argues that the weapons enhancement imposed as part of his sentence rendered his guilty plea unknowing and involuntary, and that the enhancement was in violation of new law, announced in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which law he argues applies retroactively to the 2010 conviction and sentence. (Amended Motion at 4.) The recommendation is that the Court deny relief and dismiss the motion.

I.     FACTS AND PROCEDURAL HISTORY

Pursuant to a sealed two-count indictment, in November 2009, the Government charged Petitioner with conspiracy to distribute and possess with intent to distribute oxycodone from March 1, 2009, to July 24, 2009 (count one); and with possession with intent to distribute oxycodone on or about July 24, 2009 (count two). (Sealed Indictment, ECF No. 2.) At the plea hearing, in

response to the Court's inquiry, Petitioner represented that he did not disagree with anything in the prosecution version of the case. (Prosecution Version, ECF No. 20; Plea Tr. at 12, ECF No. 50.)

According to the Government's version of the case, the evidence at trial would have consisted of telephone records and the testimony of law enforcement agents, two cooperating defendants, and a certified laboratory chemist. The evidence would have established that on July 24, 2009, when Petitioner's roommate, who was cooperating with law enforcement after having been the subject of a search that day, asked Petitioner for sixty pills, Petitioner told the roommate that sixty oxycodone[1] pills were hidden in a closet in their shared bedroom at their residence in Brewer, Maine. The Government also represented that upon a search of the closet, agents found forty-seven 80-mg pills in a plastic tote. They also found Petitioner's photo ID, miscellaneous paperwork, and approximately $1,400 in United States currency. (Prosecution Version at 1-2.)

At the direction of law enforcement agents, Petitioner's roommate asked Petitioner for another thirteen pills, and Petitioner agreed to supply them. Petitioner arranged to meet the roommate at a location in Bangor. The roommate and an agent appeared at the location. When agents approached Petitioner's vehicle, he ran, but was soon apprehended. The agent found thirteen 80-mg oxycodone pills in a small plastic bag on Petitioner's person, and ten and one-half 80-mg oxycodone pills and $1,348 in United States currency in another bag in Petitioner's possession.

After Petitioner's arrest, he admitted that (1) he paid $60 per pill from his supplier: (2) he sold 80-mg pills for $80 to $100 apiece; (3) he had been selling 80-mg pills for the past four months; (4) he sold fifty to 100 pills per day; and (5) he had been staying at the searched residence in Brewer for approximately one week. The roommate would have testified that from March 2009

---

[1] This recommended decision refers to both oxycontin (brand name) and oxycodone (generic) as oxycodone.

until the day of his arrest, he was receiving pills from Petitioner and selling between twenty and forty 80-mg pills per day; that Petitioner would front the pills, and the roommate would sell them, keeping $10 per pill in profit and returning the rest of the money to Petitioner; and that on July 24, 2009, he received twenty 80-mg pills from Petitioner, sold them, then received an additional twenty-five pills, which were the ones that agents found on the roommate. (Prosecution Version at 2-3.) Another cooperating witness would have testified that he purchased pills from Petitioner's roommate beginning in February or March 2009, and that he understood that Petitioner supplied the pills to the roommate. The witness was also prepared to testify that when the roommate was not available, he purchased pills from Petitioner. (Prosecution Version at 3.)

The Court conducted a plea hearing pursuant to Fed. R. Crim. P. 11. (ECF Nos. 30, 50.) In the colloquy that preceded the Court's acceptance of the plea, the Court explained to Petitioner that Petitioner was subject to a maximum term of imprisonment of not more than twenty years, and that he was subject to a term of supervised release ranging from a minimum of three years to a maximum of life. (Plea Tr. at 7.) The Court explained to Petitioner that if he violated the terms of his supervised release, he could be sentenced to imprisonment for a period not to exceed two years. (Plea Tr. at 7.) The Court asked counsel if there were any issue concerning a sentencing floor, and counsel replied that there was not. (Plea Tr. at 7.) The Court also asked Petitioner whether he disagreed with anything set forth in the Government's version of the offense, and Petitioner replied that he did not. (Plea Tr. at 12.) After confirming that the parties did not have a plea agreement, the Court explained to Petitioner that the Court may or may not accept the prosecutor's sentencing recommendations; that the Court may impose a sentence more or less severe than that recommended by the prosecutor or that was indicated by the sentencing guidelines;

and that Petitioner would not have the right to withdraw his plea after the Court announced the sentence. (Plea Tr. at 12-14.)

At the conclusion of the hearing, which included the Court's extended inquiry to determine whether the plea was both knowing and voluntary, the Court found that there was a factual basis for the plea, that Petitioner was competent to enter the plea, that he understood his rights and the minimum and maximum punishment, that the plea was not coerced, and that Petitioner knowingly and voluntarily entered the plea. On that basis, the Court accepted the plea. (Plea Tr. at 15-16.)

At sentencing, Petitioner objected to the Government's proposed two-level weapons enhancement for the firearm that was found under Petitioner's roommate's mattress. (Sentencing Tr. at 4, ECF No. 51.) The Court noted that Petitioner was living with the roommate, who had separately pleaded guilty to conspiracy-to-possess charges. Two days before Petitioner's arrest, two men stole oxycodone pills and cash from Petitioner's roommate. The roommate then took his father's 9-millimeter handgun, loaded it, and put it under his mattress. Petitioner slept on a futon in a shared bedroom. (Sentencing Tr. at 7.) The roommate testified before the grand jury that he showed the gun to Petitioner and that Petitioner knew that the gun was being kept in the shared room along with the oxycodone. (Sentencing Tr. at 5-7; Attachment to Government's Response, ECF No. 54-1.) The Court found that Petitioner had constructive possession of the handgun, which is sufficient for the imposition of the sentencing enhancement. Alternatively, the Court found that the gun was part of a broader drug trafficking conspiracy, which also would justify the enhancement. (Sentencing Tr. at 6-10.)

4

At sentencing, the Court determined that Petitioner was responsible for 3,298 kilograms of marijuana equivalent, for a base offense level of 34.[2] (Sentencing Tr. at 18.) From a base offense level of 34, the Court reached a total offense level of 31 by: (1) adding two levels for the handgun, pursuant to USSG § 2D1.1(b)(1); (2) subtracting two levels under the "safety valve" provisions of USSG § 5C1.2(a); and (3) subtracting three levels for acceptance of responsibility, pursuant to USSG § 3E1.1. (Sentencing Tr. at 18.) With a criminal history category of I, the applicable guideline range was 108 to 135 months. (Sentencing Tr. at 18-19.) The Court imposed a prison term of 108 months on each of the counts, to be served concurrently, and imposed a term of three years of supervised release on each of the counts, to be served concurrently. (Sentencing Tr. at 39; Judgment at 2-3.)

The Court entered judgment in July 2010, and Petitioner did not file an appeal. He filed the pending section 2255 motion in August 2013, which was just over three years after the July 2010 judgment. In response to the Court's directive, the Government responded to the Petition, and asked that the Court dismiss the Petition. (Response, ECF No. 54.) Petitioner did not file a reply.

## II. DISCUSSION

### A. Standard of Review

A person may move to vacate his or her sentence on any one of four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the

---

[2] "The sentencing guidelines provide a formula for converting drugs into equivalent units of marijuana for sentencing purposes." *United States v. Mills,* 710 F.3d 5, 9 (1st Cir.2013); *see* U.S.S.G. § 2D1.1 cmt. n. 10 (E) (2009) (since recodified as cmt. n. 8 (D) (2012).

5

maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994). Here, Petitioner contends that the sentence was in violation "of the Constitution or laws of the United States." *Id*.

The burden is on the section 2255 movant to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

**B. Analysis**

Petitioner argues that the weapons enhancement was in violation of a new law announced in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). In *Alleyne*, the Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155. Petitioner contends that because a jury did not make a determination regarding the weapons enhancement, and because, he argues, the law applies retroactively to the 2010 judgment and sentence, he is entitled to relief from the judgment. More specifically, Petitioner argues that the weapons enhancement rendered his guilty plea unknowing and involuntary.

The Government argues that (1) the motion is not timely; (2) *Alleyne* does not apply; (3) any challenge to the weapons enhancement was procedurally defaulted because Petitioner failed to take a direct appeal; (4) the weapons enhancement was warranted based on the facts in Petitioner's case; and (5) the weapons enhancement did not render Petitioner's guilty plea unknowing or involuntary.

28 U.S.C. § 2255(f), which governs the time within which Petitioner's motion must be filed, provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by Governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such Governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Although Petitioner filed his motion more than one year after the entry of judgment, Petitioner contends that because of the Supreme Court's decision in *Alleyne*, his motion is properly before the Court in accordance with § 2255(f)(3).

Petitioner's argument is without merit. *Alleyne* involved sentencing facts that increased a mandatory statutory minimum, rather than a typical guideline assessment. *Alleyne* does not apply to facts that affect the sentencing guideline range because the guidelines are advisory rather than mandatory. *See United States v. Volpendesto*, Nos. 11-3022, 12-1180, 12-1656, --- F.3d ---, 2014 WL 1148326, at *19 n.8, 2014 U.S. App. Lexis 5428, at *56-57 (7th Cir. Mar. 24, 2014) (citing

7

*United States v. Hernandez*, 731 F.3d 666, 672 (7th Cir. 2013) (holding that the judicial determination of a fact that triggers a higher advisory guidelines range does not offend the Fifth or Sixth Amendments)); *Rogers v. United States*, No. 12-6141, --- F. App'x ---, 2014 WL 1272121, at *3, 2014 U.S. App. Lexis 6060, at *10-11 (6th Cir. Mar. 31, 2014) (unreported) (citing *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013)). In this case, the enhancement was not used to increase a mandatory sentence. Indeed, neither conviction carried a mandatory minimum sentence.[3]

Petitioner's motion also fails because the issue of the weapons enhancement is procedurally defaulted. Petitioner could have challenged the weapons enhancement in a direct appeal from his sentence, but he did not file an appeal. "Under the longstanding 'procedural default' rule, '[a] nonconstitutional claim that could have been, but was not, raised on appeal, may not be asserted by collateral attack under § 2255 absent exceptional circumstances.'" *Damon v. United States*, 732 F.3d 1, 4 (1st Cir. 2013). Petitioner has not made an argument that this case presents exceptional circumstances, and the record does not support a finding of exceptional circumstances to excuse the procedural default.[4]

Petitioner argues that the weapons enhancement rendered his plea unknowing and involuntary. (Motion at 4.) This argument lacks merit. The record reflects, and Petitioner does not contest, that at the plea hearing, the Court explained and Petitioner represented that he

---

[3] Even if the *Alleyne* holding were applicable to factors relevant to a guideline assessment, *Alleyne* has not been applied, and does not apply, retroactively to cases on collateral review. *See Al-Rikabi v. United States*, Nos. 2:07-cr-00106-GZS, 2:13-cv-00268-GZS, 2014 WL 640266, at *5-6; 2014 U.S. Dist. Lexis 20568, at *14-20 (recommended decision) (collecting cases), 2014 U.S. Dist. Lexis 19559 (D. Me. Feb. 18, 2014) (order affirming).

[4] In the unlikely event that the record is construed to establish exceptional circumstances, Petitioner's contention that the Court erred in the application of the weapons enhancement fails. The grand jury testimony presented at the sentencing provided the basis for the Court's finding that Petitioner knew that the roommate kept the gun in their shared bedroom where the illegal drugs were also kept. (Sentencing Tr. at 5, 9, ECF No. 51.) *See United States v. Jackson*, 3 F.3d 506, 509 (1st Cir. 1993) (holding, in a sentencing appeal, that proof by a preponderance of the evidence that the defendant knew that a weapon was being kept under her bed by the man with whom she shared an apartment, and the apartment was used for drug trafficking, was sufficient for purposes of imposing the weapons enhancement).

understood that he could be sentenced to a maximum of twenty years. Even with the weapons enhancement, Petitioner was sentenced within the twenty-year sentencing range about which the Court advised Petitioner at the plea hearing. Furthermore, as the Government points out, Petitioner did not seek to withdraw the plea after he reviewed the presentence investigation report, which contained the recommendation of the weapons enhancement. (Response at 18-19.) "'The timing of a motion to withdraw a guilty plea is significant. Delayed requests, even if made before sentencing, are generally regarded with disfavor.'" *United States v. Laliberte*, 25 F.3d 10, 15 (1st Cir. 1994) (quoting *United States v. Parrilla-Tirado*, 22 F.3d 368, 373 (1st Cir. 1994)). The longer a defendant waits, "the more potency his motion must have in order to gain favorable consideration." *Parrilla-Tirado*, 22 F.3d at 373. In short, Petitioner presents a significantly delayed request, and the record contains no evidence to support Petitioner's contention that his plea was unknowing and involuntary.

## III. CONCLUSION

Based on the foregoing analysis, the recommendations are as follows: (1) that an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases; (2) that the Court dismiss Petitioner's motion for habeas relief under 28 U.S.C. section 2255; and (3) that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 18, 2014                                        /s/ John C. Nivison
                                                      U.S. Magistrate Judge